## UNITED STATES v. THE YACONA et al.

### No. 247/1950.

United States District Court
E. D. Pennsylvania.

May 28, 1953.

Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., Alfred L. Luongo, Asst. U. S. Atty., Philadelphia, Pa., Joseph G. Hildenberger, U. S. Atty., Philadelphia, Pa., William T. Foley, Jr., Admiralty Trial Attorney, United States Department of Justice, Washington, D. C., for the United States.

Krusen, Evans & Shaw, Thomas E. Byrne, Jr., Philadelphia, Pa., Joseph J. Murphy, Philadelphia, Pa., of counsel, for The Yacona.

Barnes, Dechert, Price, Myers & Rhoads, Philip Price, Philadelphia, Pa., F. Hastings Griffin, Jr., Philadelphia, Pa., of counsel, for Pennsylvania R. Co.

GANEY, District Judge.

The suit here involved was brought by the United States for damages caused to a dolphin when it was struck by the motor vessel Yacona. The latter has impleaded The Pennsylvania Railroad Company as the owner and operator of a drawbridge spanning the Chesapeake and Delaware Canal. The amount of damages is admitted to be $4,565. The issues posed are: were both or just one of the respondents responsible, or was the damage unavoidable. From the evidence presented to it, the court makes the following Findings of Facts:

1. The United States is the owner of the stationary navigation structure, known as a 37-pile dolphin, located in the Chesapeake and Delaware Canal.

2. The motor vessel Yacona is a single screw tank vessel 214 feet in length, 37 feet in beam with a draft when fully loaded of 14 feet, 3 inches. Her gross tonnage is 1,083 tons, her net being 612 tons.

3. The Pennsylvania Railroad Company, the impleaded respondent, is the owner and operator of the railroad drawbridge crossing the Chesapeake and Delaware Canal at a point approximately nine miles from Reedy Point, the eastern terminus of the Canal.

4. The Chesapeake and Delaware Canal is a body of water 12 miles long connecting the Delaware River with the Chesapeake Bay. It is a government owned sea level canal with a channel 27 feet deep and 250 feet wide at its narrowest portion. At Lorewood Grove, a point approximately 8 miles west of Reedy Point, the canal bends in a northwesterly direction at about an angle of forty-five degrees.

5. At several points along the banks of the canal there are traffic lights which are normally showing green but which can be changed to amber or red. A green light indicates that the canal is open to navigation and that the vessel may proceed. One

such traffic light is located on the north bank of the canal at Lorewood Grove about 5,800 feet east of The Pennsylvania Railroad drawbridge and 150 feet east of the bend.

6. This light can be changed by the drawbridge tender. Before he may do so, however, he must get authority or instructions from the dispatcher's office.

7. On the north side of the channel beginning 360 feet from the drawbridge are seven 37-pile clusters, known as emergency dolphins, stationed at intervals of 100 feet in a line just above and almost parallel to the north side of the channel.

8. Beyond the bend of the canal about 800 feet west of the Lorewood Grove traffic light and at 5,000 feet east of the drawbridge, a sign is erected on the bank informing vessels and crafts who wish to pass under the drawbridge to sound three whistle blasts.[1]

9. Several lights operated by the bridge tender are located on each side of the drawspan of the bridge, which is of the vertical lift type, to direct traffic approaching from either direction of the canal. These lights, which supplement the whistle blast signals, light up and indicate as follows:

(a) *Fixed green:* bridge open to navigation and vessel may proceed;

(b) *Fixed red:* bridge closed to navigation in that direction; vessel unable to pass under drawspan must be kept under control so it can be stopped if necessary;

(c) *Flashing amber:* delay approach until vessel coming from opposite direction clears bridge;

(d) *Flashing red:* vessel must stop and tie up before reaching bridge.

10. On August 11, 1948, when the weather was clear and visibility was excellent, the drawbridge tender saw the S.S. Paducah Victory, which was proceeding eastwardly in the canal, pass under Summit Bridge 1.4 nautical miles west of the drawbridge. The Paducah Victory, a victory ship, was 495 feet long, and her gross tonnage was from 8 to 10 thousand tons. At 5:38 P.M., E.S.T., the tender gave her the green light to indicate that she had the right of way to pass under the bridge.

11. When the Paducah Victory was between 2,500 and 3,000 feet from the bridge, the tender saw for the first time the Yacona which had rounded the bend at Lorewood Grove at approximately 5:48 P.M., E.S.T.

12. At 5:50 P.M., E.S.T., when the Yacona was abeam of the "5000 foot warning sign" she gave three whistle blasts to indicate that she desired to pass under the bridge.

13. Although a current of 2 to 2½ knots was in the Yacona's favor,[2] the bridge tender, taking into consideration the size of the "Paducah Victory", her nearness to the bridge and the fact that he had already given that vessel the green light, gave the Yacona a fixed red or flashing amber light. He did not give the usual returning whistle blast to the Yacona for fear that it might confuse the Paducah Victory.

14. Under the circumstances, the drawbridge tender's exercise of judgment was reasonable.

15. When the Yacona saw the traffic light signal on the drawspan, he knew that another vessel was approaching from the other side; she was not bewildered by the bridge's failure to signal by whistle blasts.

1. Subsection (j) of 33 C.F.R. (1949 Ed.) § 207.100 concerning drawbridges spanning the C. and D. Canal, provided in part as follows:

"(1) The signal for opening of a drawbridge shall be three blasts of a whistle or horn blown by the vessel or craft desiring to pass. If the drawspan is to be opened immediately the bridge tender will reply with one blast of a whistle or horn. If the drawspan is not to be opened immediately the bridge tender will reply with two blasts of a whistle or horn; thereafter four blasts of a whistle or horn will be blown by the bridge to indicate that the bridge is open to navigation and that the vessel may proceed."

2. Subsection (h) of 33 C.F.R. (1949 Ed.) § 207.100, dealing with "Right of Way", stated: "All vessels proceeding with the current shall have the right of way over those proceeding against the current."

Efforts were made to slow her approach to the bridge, and she was permitted to drift with the tide. When she was within 1000 feet of the bridge and the Paducah Victory had not cleared the span, the Yacona reversed her engines and drew alongside one of the 37-pile dolphins with such force that she caused damages in the amount of $4,565 to the dolphin.

16. Even though a current of 2 to 2½ knots is considered fairly strong in the canal it was not of such force as to prevent the Yacona—if her handlers had used ordinary skill and judgment of good seamanship—from striking the dolphin with the force that it did.

17. The speed limit for vessels transiting the canal was set forth in subdivision (f) of 33 C.F.R. (1949 Ed.) § 207.100, which provides in part as follows: " * * When approaching any bridge the speed of vessels shall be regulated that they will be under full control and, in the event that the span cannot be raised immediately, be able to stop and tie up at the emergency dolphins."

18. The situation in which the Yacona found herself just prior to making contact with the dolphin did not amount to the intervention of some occurrence which could not have been foreseen or guarded against by the ordinary exertion of the kind of judgment which good seamanship requires.[3]

19. In the meantime, at 5:47 P.M., E.S.T., when the Paducah Victory cleared the drawbridge, the tender gave the Yacona the green light. At about 6:01 P.M., E.S.T., she also cleared the drawbridge.

### Conclusions of Law

1. This court has jurisdiction of the subject matter and the parties to this suit.

2. The Yacona, a vessel in motion having collided with a stationary object, has not shown that it was without fault or that the accident was in part the result of the negligence of the impleaded respondent.

3. The Yacona's negligence was the sole and proximate cause of the damage to the dolphin.

4. The libellant is entitled to a decree against the respondent, Yacona, in the amount of $4,565.

5. The impleaded respondent is entitled to a decree of dismissal against the libellant.

Accordingly, the libellant and the impleaded respondent may prepare and submit decrees in accordance with the foregoing findings of facts and conclusions of law.

decided by Chief Judge Kirkpatrick on September 29, 1952.

---

3. Patterson Oil Terminal, Inc. v. The Port Covington, D.C.E.D.Pa., 109 F.Supp. 953,